**FILED**
**Jun 26, 2018**
**02:20 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **VALDEZ VENTURA,** | ) | **Docket No. 2015-07-0194** |
| **Employee** | ) | |
| **v.** | ) | **State File No. 64310-2015** |
| | ) | |
| **CCON METALS USA, INC.,** | ) | |
| **Employer** | ) | **Judge Amber E. Luttrell** |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

The Court convened an Expedited Hearing on June 4, 2018, on Mr. Ventura's request for medical and temporary disability benefits for alleged lead poisoning arising out of his employment. The issue is whether Mr. Ventura is likely to prevail at a hearing on the merits in establishing entitlement to these benefits. For the following reasons, the Court holds Mr. Ventura did not come forward with sufficient evidence to meet this burden and denies his request.

### History of Claim

Mr. Ventura worked for CCon Metals.[1] He did not testify regarding his job duties or the work he performed that allegedly caused his illness. In his Petition for Benefit Determination, Mr. Ventura listed the date of injury as June 25, 2015, and stated, "I went to get checked in June, then from June to December I had fatigue and couldn't digest. Had [too] much iron/[lead] in me. We spoke to Mike Conn [sic] and he said he will take care and never did." In his affidavit, Mr. Ventura stated,

> [I] started having diarrhea and losing strength and when I started getting my lead checked is when it all started. Since the day that it has occurred I have been [weak] since, I've taken medicine and to present time I have not been able to have strength and work because of it.

At the hearing, Mr. Ventura testified on direct examination that, "all I want is for them to

---

[1] Mr. Ventura testified with the assistance of Miguel Soto, a registered Spanish court interpreter.

1

pay the doctors in Henderson and compensation for all the time that I've lost so I can get better."[2]

On cross-examination, Mr. Ventura testified he quit his job at CCon Metals on June 19, 2015, because he could not work due to illness and stated, "they would not send me to a doctor." He indicated his symptoms began sometime prior to June 19. He told his employer he felt sick and could not keep food down and requested treatment. According to Mr. Ventura, someone from CCon took him to a Savannah doctor for testing but no treatment. He testified that two weeks later, he still felt sick, was losing strength, and resigned. Mr. Ventura stated he then sought medical treatment from his physician, Dr. Schwartz.

Mr. Ventura acknowledged that he was angry when he spoke to his supervisor, Mike Pugh, on the day he resigned because CCon requested he wear coveralls as part of its safety protocol. He explained he already suffered from lead exposure and could not wear the coveralls because he had to visit the restroom many times per day due to his illness. Mr. Ventura denied receiving any information from CCon Metals about the dangers of lead exposure.

*Medical Treatment*

Approximately four months following his resignation, CCon Metals provided Mr. Ventura a panel of physicians from which he selected Dr. Timothy Linder. Mr. Ventura saw Dr. Linder on October 13, and Dr. Linder noted, "Pt states he thinks he has lead poison from previous job. He has diarrhea a lot and after eating very little, itches all over, and his [right] hand 4[th] digit hurts. He had labs drawn for lead level results were 34. Also back hurting and muscle weakness." Dr. Linder ordered blood work and noted, "level brought with pt was only 34, will repeat level but do not suspect lead as cause."

Mr. Ventura returned to Dr. Linder and reported some improvement, but he still complained of abdominal cramps and muscle aches. Dr. Linder diagnosed epigastric abdominal pain and indicated, "Pt having multiple issues that do not seem to be related to his lead exposure. I recommend he see his primary doctor . . . for follow up." In a separate note, Dr. Linder concluded, "lead levels are normal, having stomach problems and muscle aches, feel he needs abdomen work up and muscle work up but do not feel it is related to lead level." Dr. Linder later completed a Form C32, which confirmed his opinion that Mr. Ventura did not suffer an employment-related injury.

Mike Pugh and Joseph Pugh testified for CCon Metals.

---

[2] Mr. Ventura did not recall the names of the physicians he saw for testing or treatment, but he referred to them by their locations. The Court understood the "Savannah doctor" to be a physician who ran blood work on CCon Metal employees. The "Henderson doctor" appeared to be Dr. Schwartz, Mr. Ventura's personal physician, and the "Selmer doctor" was Dr. Linder, the panel doctor.

*Mike Pugh's Testimony*

Mike Pugh is the Operations Manager for CCon Metals. He supervised Mr. Ventura. He testified regarding the company's safety requirements and his interactions with Mr. Ventura leading up to his resignation.

Mr. Pugh testified Mr. Ventura worked in the "breaking room," but he did not describe his job duties. He testified that CCon requires employees to wear safety equipment to protect them from lead residue or acid spills. It also transports employees to a physician every six months for blood work to test for lead. Mr. Pugh testified that Mr. Ventura was regularly tested and never had an elevated level that required he be removed from his job.

Mr. Pugh also testified that CCon explained its safety rules to employees and ensured that all employees complied. When CCon hired Mr. Ventura in 2014, it required employees to wear aprons, rubber gloves, and respirators. Mr. Pugh testified that CCon's safety requirements "evolved" over time to make the company safer. Around the time that Mr. Ventura resigned, CCon updated its safety protocol by requiring employees to wear coveralls. Mr. Pugh stated once the coverall program started, all employees were required to use them. He discussed the coverall requirement with Mr. Ventura on June 19 and confirmed that Mr. Ventura refused to wear them. Mr. Pugh testified that, had Mr. Ventura not quit, he would have been terminated for his refusal.

Concerning Mr. Ventura's alleged injury, Mr. Pugh testified he "did not recall" Mr. Ventura alleging before he resigned that he believed his illness was due to lead exposure. When he learned that Mr. Ventura alleged a work injury, Mr. Pugh gave him a panel of physicians. Mr. Pugh recalled that after Mr. Ventura saw Dr. Linder, Mr. Ventura and his friend/interpreter, Pico, came to see him and were "complaining of problems." Mr. Pugh informed Mr. Ventura he understood his lead levels were okay and did not believe his issues were work-related.

*Joseph Pugh's Testimony*

Joseph Pugh is the President/Owner of CCon Metals. He testified that CCon Metals paid Dr. Linder's office on May 16, 2016, by credit card, which was the only authorized payment for medical treatment. He denied paying any bills provided by Mr. Ventura and stated he only paid Dr. Linder. CCon did not provide any evidence indicating it filed a Notice of Controversy or Notice of Denial.

**Findings of Fact and Conclusions of Law**

To prove a compensable injury, Mr. Ventura must show that his condition was caused by an incident or specific set of incidents, identifiable by time and place of

3

occurrence and that it arose primarily out of and in the course and scope of his employment. Further, he must show "to a reasonable degree of medical certainty that the employment contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." *See* Tenn. Code Ann. § 50-6-102(14)(B). The term "reasonable degree of medical certainty" means that "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." *See* Tenn. Code Ann. §50-6-102(14)(D). Thus, causation must be established by expert medical evidence.

However, Mr. Ventura need not prove every element of his claim by a preponderance of the evidence at this Expedited Hearing in order to obtain relief. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Here, CCon primarily contended that Mr. Ventura failed to come forward with proof to establish a compensable injury under Tennessee Code Annotated section 50-6-102. Specifically, it argued Mr. Ventura failed to come forward with any medical evidence causally relating his illness to his employment. Alternatively, CCon argued that Mr. Ventura's claim was barred due to his willful misconduct and failure to use a safety device under Tennessee Code Annotated section 50-6-110(a)(1) and (4) and the statute of limitations.

The Court finds Mr. Ventura did not come forward with sufficient proof to establish a compensable injury as required by statute. As previously stated, Mr. Ventura is not required to prove his case by a preponderance of the evidence at this expedited hearing stage; however, he must still come forward with sufficient evidence that a Court may determine he is *likely to prevail* at trial in proving an injury by accident arising primarily out of and in the course of employment.

In this case, the Court finds Mr. Ventura failed to show a work-related incident, or specific set of incidents, identifiable by time and place of occurrence that caused his alleged symptoms. He offered no proof of his actual job duties at CCon or the specific employment activity or environment that allegedly caused his exposure and resulting illness. The proof merely indicated Mr. Ventura worked in a facility where employees could be exposed to lead and he experienced abdominal symptoms sometime in June 2015.

Moreover, Mr. Ventura did not produce any medical evidence to corroborate his claim. The only medical proof came from Dr. Linder, the panel-selected treating physician who completed a C-32. After reviewing Mr. Ventura's prior blood work, examining him, and obtaining additional blood work, Dr. Linder concluded that Mr. Ventura's lead levels were normal and he did not sustain an employment-related illness.

4

Dr. Linder's causation opinion is afforded a presumption of correctness that is rebuttable only by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E).

The Court recognizes that Mr. Ventura disputed Dr. Linder's conclusion; however, Mr. Ventura's disagreement, while genuine, is legally insufficient to refute Dr. Linder's opinion. Concerning the employee's burden to produce medical proof, the Workers' Compensation Appeals Board held:

> In cases . . . where an employer has presented expert medical proof that the employee's condition is not work-related, the employee must present expert medical proof that the alleged injury is causally related to the employment when the case is not "obvious, simple [or] routine." While lay testimony may be probative on the issue of causation, it is insufficient to meet an employee's burden of proof in the absence of medical evidence.

*Berdnik v. Fairfield Glade Cmty. Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10 (May 18, 2017) (internal citations omitted).

Based on the foregoing, the Court holds Mr. Ventura did not come forward with sufficient proof to show he is likely to prevail at trial and denies his request for medical and temporary disability benefits. Because Mr. Ventura did not meet his burden at this stage, the Court holds it need not address the sufficiency of CCon's additional safety violation and statute of limitations defenses.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Ventura's claim against CCon Metals USA, Inc. and its workers' compensation carrier for the requested benefits is denied.

2. **This matter is set for a telephonic Status Hearing on August 6, 2018, at 10:00 a.m. Central Time. You must call toll-free 855-543-5039 to participate in the hearing.**

**ENTERED June 26, 2018.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:
1. Mr. Ventura's Affidavit
2. Mr. Ventura's September 28, 2017 letter
3. Dr. Linder note
4. First Report of Injury
5. Wage Statement
6. Panel of Physicians
7. Separation Notice
8. Notice of Intent to Rely Upon Written Medical Reports
9. Uniform list
10. Prime Care Medical receipt

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Motion to Add Issues in Dispute
5. Status Hearing Order and Order Setting Expedited Hearing
6. Order on Employer's Motion to Add Issues in Dispute
7. Employer's Position Statement for Expedited Hearing
8. Employer's Exhibit and Witness List for Expedited Hearing

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of June, 2018.

| Name | First Class Mail | Certified Mail | Via Email | Service sent to: |
|------|------|------|------|------|
| Valdez Ventura, Employee | X | X | | 112 Plum St. Selmer, TN 38375 |
| Hailey David, Employer's Attorney | | | X | davidh@waldrophall.com smithj@waldrophall.com |

_Penny Shrum by tw_

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

7